THE STATE ex rel. SCHOOL DISTRICT NUMBER 87 v. F. E. SHUCK et al., Directors of SCHOOL DISTRICT NUMBER 51, Appellants.

Division One, December 22, 1917.

1. **APPELLATE JURISDICTION**: Revenue Laws. A mandamus proceeding, brought at the relation of a school district against the directors of another to determine whether the former is entitled to share in the state school funds, involves a construction of the revenue laws, and consequently appellate jurisdiction is in the Supreme Court.

2. **NEWLY ORGANIZED SCHOOL DISTRICT**: Right to Share in State Funds. The Constitution says that "no school district, in which a free public school has not been maintained at least three months during the year for which the distribution is made, shall be entitled to receive any portion" of the income of the funds provided by the State for the support of free public schools; and the Act of 1911, Laws 1911, p. 400, says that no district which shall fail to make the report to the county clerk required by law, or that has failed to maintain a school for the time required, "shall be entitled to any portion of the public school fund for that year." *Held*, that a school district, which was organized at the April meeting, by the division of an existing district, is not entitled to any portion of the state funds apportioned to the county by the State Superintendent on August 30th of the same year, but all

the remaining part of the district so divided is entitled to the same portion of said fund as it would have been had not a part of its territory been set off and organized into said other district.

3. ——: ——: Equitable Principles: Judicial Legislation. However fair it would seem that à proportionate part of the income from the state school funds should follow the children, on whose account it was apportioned, into a newly organized school district, the fact remains that the Constitution and statute forbid it, and the courts cannot permit it without indulging in judicial legislation.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED (*with directions*).

*A. H. Harrison* for appellant.

(1) Mandamus was not the proper remedy as the relator had an adequate remedy at law, and the rule is well settled that mandamus will not lie, unless the relator shows a clear right to the relief which he seeks to enforce. State ex rel. v. Buhler, 90 Mo. 570; State ex rel. v. Fort, 180 Mo. 109; State ex rel. v. Thurman, 232 Mo. 164. The relator was not entitled to the remedy of mandamus till its claim was reduced to a judgment. State ex rel. v. Clay County, 46 Mo. 236; Mansfield v. Fuller, 50 Mo. 340; Cloud v. Pierce City, 86 Mo. 370. (2) A school district is not entitled to any portion of the state funds until a free public school shall have been maintained therein for at least three months during the year for which the distribution is made. Constitution, art. 11, sec. 2. The apportionment and disposition of the public school fund is to be made in accordance with constitutional and statutory requirements on the subject. 35 Cyc. 822; Veal v. County Court, 15 Mo. 412; State ex rel. v. School District, 90 Mo. 395. The law makes no provision for the state apportionment to be given to a new district created, and in the absence of such law it was error to give any portion of the funds to District 87. District No. 6 v. District No. 5, 18 Mo. App. 266; State ex rel v. School District, 90 Mo. 395. District 87 was not entitled to any of the state apportion-

ment for the reason that it had not maintained a school for the previous year, and had not filed any report showing the total number of days' attendance of all pupils. Laws 1911, sec. 1, p. 398; Joint School Dist. No. 8. v. School Dist. No. 5, 92 Wis. 608. (3) The law fixes the property that shall be taken into consideration in determining the rights of the new district in the property of the old district, and that is the school house and accumulated cash or other property from taxes collected in the territory from which the new district has been formed. Sec. 10839, R. S. 1909. The law does not contemplate a division of the apportionment of the State school funds where a district is divided; the only property that can be divided is that pointed out in the statute. District No. 6 v. District No. 5, 18 Mo. App. 266; State ex rel. v. Henderson, 145 Mo. 338; State ex rel. v. School District, 90 Mo. 395; School District v. Weber, 75 Mo. 558. The relator having been paid funds belonging to appellants, the appellants are entitled to the funds returned, or as in the present case plead the same as a set off. Sec. 1866, R. S. 1909; School Board v. School Board, 36 La. Ann. 806; Spydell v. Johnson, 128 Ind. 235; Onedia v. Madison County, 136 N. Y. 260; Lusk v. Perkins, 48 Ark. 238; Cope v. Collins, 37 Ark. 649; Floer v. State, 133 Ind. 453; Sternberg v. State, 48 Neb. 299; State v. Slocum, 34 Neb. 368.

*Harry Clymer* for respondent.

(1) Mandamus is the proper remedy to compel the performance of the ministerial duty of any public officer. State ex rel. v. Roark, 34 Mo. App. 332; State ex rel. v. Oliver, 116 Mo. 194. The amount to be paid to District Number 87 was agreed upon at a joint meeting of the boards of directors held at the school house in the old district on July 10, 1912. This was the legal and proper way to ascertain what amount was due to District Number 87. Sec. 10839, R. S. 1909. There is no merit in appellants' contention that the claim should have first been reduced to a judgment. The amount due to District Number 87 was agreed upon in the way and manner provided by law, and the time when such payment should be made was fixed,

and relator's right to that money is as clear as the judgment of any court could have made it. State ex rel. v. Gilbert, 163 Mo. App. 686. When a board of directors of a school district fail and refuse to perform any statutory duty mandamus is the proper remedy to compel the performance of such duty. State ex rel. v. School Directors, 74 Mo. 21; State ex rel. v. School Board, 131 Mo. 514. (2) At the joint meeting held on July 10, 1912, the only property that was, or could have been taken into consideration, was the school house, school property and the accumulated cash arising from taxes collected and then in the county treasury. Sec. 10839, R. S. 1909; State ex rel. v. Ins. Co., 152 S. W. 620. (3) It was the plain intention of the Legislature that such funds should be for the purpose of assisting in maintaining a school in each district for the succeeding year. The board of directors of relator complied with Section 10790 and filed the enumeration with the county clerk in May, 1912, and also filed their estimate of the amount of levy for various purposes, as required by law. The clerk of relator did not make a  report under the Act of 1911, for the reason that his district was not formed or organized until after the school election held in April, 1912, consequently it did not exist during the school year of 1911 and 1912, and no such report could be made. (4) The construction of the Act of 1911 relative to the apportionment of public funds, should accord with common sense and reason, and it should not be construed so as to require impossible or unreasonable things. Cole v. Railroad, 47 Mo. App. 628; State ex rel. v. Railroad, 105 Mo. App. 213; St. Louis v. Christian Bros. College, 165 S. W. 1059. (5) The relator in State ex rel. v. District, 90 Mo. 395, was seeking to compel the payment of a part of the public funds to the new district, and that was the only issue involved.  That is not the issue in this case. In this case the relator is seeking to compel the issuance of a warrant for the balance of the indebtedness which it was agreed was due to relator from District Number 51 for relator's interest in the school house and school property and money on hand in the

county treasury arising from taxes collected on property in the territory from which the new district had been formed. (6) This is one of the cases in which every principle of right and justice sustains the contention of the relator, and the law is said to be a rule of action commanding what is right and prohibiting what is wrong. There can be no sensible reason given why the children who attended school in the old district during the school year of 1911 and 1912, and who were afterward cut off into a new district, and whose attendance went to make up the average daily attendance in District Number 51 for that year, should be deprived of the benefit of any of the public funds for the succeeding year. The Legislature never intended such an unjust, oppressive and absurd thing.

RAILEY, C.—The opinion of the Springfield Court of Appeals, certifying the cause to this court, will be found reported in 184 Mo. App. 511. The case was certified here, because it became necessary to construe the revenue laws of our State, and the Court of Appeals was without jurisdiction to do so. Upon an examination of the record, we find that the statement made by ROBERTSON, P. J., of the Court of Appeals, as to the facts and issues in the case, is substantially correct, and is hereby adopted as our statement, to-wit:

"At the regular annual school meeting of School District Number 51 of Crawford County, held April 2, 1912, there was submitted and carried a proposition to divide and detach therefrom a portion thereof and to form a new district, which was numbered 87, under Section 10837, Revised Statutes 1909, and thereafter, on July 10, 1912, the board of directors of the two districts, in pursuance of Section 10840, met to divide the property as required by Section 10839, and after an agreement had been reached the directors of District 51 issued and delivered to the directors of said District 87 the following: 'We, the undersigned directors of School District Number 51, Township 38, Range 4 and 5,

Crawford County, Missouri, acting for aforesaid district, hereby agree to pay to District Number 87, Township 38, Range 4 and 5, the sum of one hundred and sixty dollars for their interest in school property and money in treasury in said district Number 51. Said sum to be paid as follows: one hundred dollars cash and sixty dollars by the first of January, 1913. If said sixty dollars be not paid when due, to bear interest from maturity at the rate of five per cent per annum.'

"The cash payment was made. When the apportionment, $80.77, from the office of the State Superintendent of Schools for the year 1912, reached the office of the county clerk August, 1912, under Section 10822 (amended, Laws 1911, p. 398), it was by the clerk paid to the county treasurer on the 31st day of that month, $40.39 to the credit of District 51, and $40.38 to the credit of District 87. The latter district, not having any school house, had no school or attendance for the year ending June 30, 1912, and made no report to the county clerk as provided for in said Section 10822, as amended, but District 51 made the report upon which the apportionment from the office of the State Superintendent was based. This report showed the 'length of school term in days, 160.' The attendance therein disclosed was shown by the testimony to have been divided about equally between the two districts. The children in District 87 had the right, under Section 10843, to attend the school in District 51 until June 30, 1912. When the directors of District 51 learned of the division of the State funds being made in the manner aforesaid they remonstrated and afterwards tendered to the directors of District 87 the balance of sixty dollars agreed to be paid on the division of July 10th, above quoted, less the amount the county clerk had turned over to the county treasurer out of said state funds. No adjustment of the controversy having been reached, the directors of District 87 petitioned for and obtained from the circuit court an alternative writ of mandamus to require the directors of District 51 to pay the sixty-dollar balance provided for

in said writing of July 10th, after it was due and after demand had been made therefor. The directors of District 51 made return to the alternative writ, alleging in defense the facts as we have detailed them and alleging and renewing the tender of the sixty-dollar balance, less the amount paid to the county treasurer out of said state apportionment. A trial resulted in a peremptory writ being awarded, and respondents there, appellants here, have appealed. There is no dispute about the facts necessary to a decision.''

I. The moneyed consideration, involved in this litigation, is small, but the principles of law which control the case are of vital importance to the public, as they call for the construction of the revenue and school laws of the State.

We are satisfied from the record, that the division of property between Districts 87 and 51, on July 10, 1912, did not include any part of the $80.77 apportioned by the State Superintendent of Public Schools, and paid over to the county clerk of Crawford County, Missouri, on August 30, 1912, for distribution. It is undisputed that the amount found due in the above settlement was $160; that $100 of said amount was paid by District 51, and that the remaining $60 was to be paid on January 1, 1913, and if not paid when due to draw interest from maturity at the rate of five per cent per annum. If nothing further appeared, except the refusal of District 51 to pay the above $60, relator would be entitled to maintain this action and the judgment of the trial court would, accordingly, be affirmed. On the other hand, if District 87, through the error of the county clerk in distributing the $80.77, received $40.38 of same which legally belonged to District 51, then the latter does not owe the above $60, but simply the difference between said sum and the $40.38, to-wit, $19.62. Appellant admits its liability for the last named amount, and tendered the same to relator. Hence, if we find that relator's demand of $60

*State School Funds: Apportionment to New District.*

should be credited with said $40.38, it will necessarily lead to a reversal of the cause.

The clerk of District 51, between June 15th and June 30th, 1912, made his report to the county clerk of Crawford County, as required by the Act of 1911, Laws 1911, page 398 and following. This *report* contained the data which it was necessary for the State Superintendent to have, in order to fix the apportionment for said district of the State school fund, which was to be distributed under the above law. It conceded that the clerk of District Number 87 made no report to the clerk of Crawford County, required by the above Act of 1911, as the district then had no school building, nor did it have any school or attendance for the year ending June 30, 1912. The $80.77, apportioned by the State Superintendent, and paid to said county clerk on August 30, 1912, was based on the report made by the clerk of District 51 to said county clerk, and was not based on any action taken by District 87. The above sum was for the school years of 1912 and 1913. The county clerk, after corresponding with the State Superintendent of Public Schools, concluded that as District 87 had been unable to file the report required by law it was equitably entitled to practically one-half the above sum collected from the State, and, hence, paid over to the Treasurer of said county, for the benefit of District 87, the above sum of $40.38.

We are cited to no provision of law which authorized the county clerk to distribute the above sum to District 87. It is contended that the distribution made by the county clerk was equitable, just, and should be sustained. In considering this question we are confronted with a certain provision of our Constitution and a statute which appear as serious obstacles in the way of following the *rule of reason* relied on by relator.

Section 2 of Article 11 of our Constitution reads as follows:

"The income of all the funds provided by the State for the support of free public schools shall be paid annually to the several county treasurers, to be

disbursed according to law; but no school district, in which a free public school has not been maintained at least three months during the year for which the distribution is made, shall be entitled to receive any portion of such funds.''

The Act of 1911, Laws 1911, at page 400, provides, that:

''. . . No district, city, or town which shall have failed to make this report to the county clerk hereinbefore required, shall be entitled to *receive* any portion of the public school funds. . . . *Provided, further,* that no district, city or town that shall have failed to afford the children thereof the privileges of a free school for at least eight months during the year ending the 30th day of June *previous* to the said distribution, provided a tax of forty cents on the one hundred dollars' assessed valuation, together with the public funds, will maintain the same, *shall be entitled to any portion of the public school fund for that year.* (Italics ours.)

It stands admitted that District 87 maintained no school during the year 1912, prior to the receipt of said $80.77, by the county clerk, in said year. We find no *exception* in the above section of our Constitution, nor in the Act of 1911, supra, which inure to the benefit of relator, in construing its rights, in respect to above matter. In our opinion, the *rule of reason* contended for by relator, cannot be successfully invoked and applied to overturn the plain provisions of above section of the Constitution and the Acts of 1911, supra. We are therefore of the opinion, that District 87, was not legally entitled to the $40.38 heretofore mentioned; that the same lawfully belonged to District 51, and should be credited on the $60 formerly due relator.

II. The *rule of reason,* in cases of this character, was considered in the two cases of the State ex rel. v. School District No. 15, 90 Mo. 395, and Rice v. McClelland, 58 Mo. 116. In the former, at pages 398-9, we said:

''It would seem to be fair that the fund should follow the children, on whose account it was apportioned, into

the new district; but the statute makes no provision for such cases, and we are not at liberty to make a law **Rule of Reason.** to accord with what may appear to us to be an equitable distribution. The difficulty here met is perhaps removed by the Act of March 4, 1885 (Laws 1885, p. 237), changing the date at which the appointment is made, but it does not affect the present case. Our attention is not called to any law by which the relators are entitled to the relief demanded, and the judgment is affirmed."

The page of the Act of 1885 referred to in the above quotation, should be 244 instead of 237. Judge BLACK, in the views above expressed, reached the same conclusion that we have, in respect to the right of the court to indulge in judicial legislation. The same principle was announced in the Rice case supra. The views expressed in both the above cases are sustained by the opinion of Judge MARSHALL in Joint School District No. 8 v. School District No. 5, reported in 92 Wis. 608.

The Rice case was decided in 1874, and the opinion of Judge BLACK, supra, was written in 1886. The General Assembly of this State has been in session many times since the above cases were decided, and the law has been permitted to remain substantially as it now exists, without affording any relief to a new district, under the circumstances here presented, in the way of securing a part of the State funds, without having made a report to the county clerk, as required by law.

In passing, it should be remembered, that the Legislature has afforded some compensation to newly formed districts by the passage of the Act of 1885, Laws 1885, pp. 237-8, where the following proviso was appended to Section 7028, Revised Statutes 1879, as follows:

"Provided, that the children in such newly created district have the right to attend school in their original districts until the thirtieth day of June following."

This provision is still contained in the present law, and will be found as a part of Section 10843, Revised Statutes 1909.

Without prolonging this discussion, we are of the opinion, that the *rule of reason,* contended for by relator, would not warrant the court in indulging in judicial legislation, and especially so, in view of the plain provisions of the above section of our Constitution, as well as those of the Act of 1911, heretofore quoted.

III.  Appellant tendered to plaintiff $19.62, being the difference between the $60 formerly due relator and the $40.38 wrongfully paid to it, which belonged to district 51. **Balancing Accounts.** The latter tendered to relator all that was legally due him.

We accordingly reverse and remand the cause with directions to the trial court to dispose of the case in accordance with the views heretofore expressed.

*Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.